Good morning, Your Honors. My name is Kevin Louie Benner. I represent the appellant plaintiff, Ms. Lomonoco. So, Your Honors, the court below, in applying the McDonnell-Douglas shifting burdens in connection with these type of ADEA cases, found in favor, or at least a question of fact, as to the first three of the elements. The only one that was left to be decided by the court, which was decided against the plaintiff, was whether there was an inference of discrimination. That was the only issue left. The court did a very lengthy decision, but there's really only one sentence that addressed the topic, and it's at page A-162 of the appendix, where the court said, the plaintiff has not shown that she was essentially replaced by similarly situated younger employees, and therefore, has not met her burden to show an inference of discrimination based upon age. That's not the standard, Your Honor. The standard that should be applied, that is applied by this court, to determine whether there is an inference of discrimination, is whether the plaintiff was similarly situated with other younger people, and she was treated less favorably. On 164, the judge also found that even if you established a prima facie case, that at the third stage of the analysis, you would lose for lack of evidence that it was a but-for cause, no? That's correct, Your Honor. I can address that right now, if you'd like, leap to that, which I will do. The proffered reason, legitimate non-discriminatory reason that was offered, is that the plaintiff was reassigned to this new position based upon her experience and skills. So to give some context, and that was the reason it was given. And it was an assignment by her as a longstanding teacher with no challenge to her competency contained in the record. And she was assigned from her teaching duties, her classroom duties, to a program in which she was told by the person who was the supervisor of the program, after having spoken with the director of the school and the CEO, that her duties were to Xerox binders. But also help develop lesson plans. I mean, isn't that something that the school- No, no, Your Honor. To support other teachers developing lesson plans. She was going to work with teachers, she was going to take all the stuff on the wall, the binders, 20 binders, four inches thick, she was going to photocopy those. And then she was going to be a support to the teachers, who the teachers were going to do their lesson plans, and they were going to then do the teaching. She was not to do the teaching. She was- All right, but what's the but-for evidence that the cause was age discrimination? In other words, my understanding is that she was teaching seven, eight classes, and that basically when she was moved, the people who took over those classes ranged in age from their 20s to their 70s. I mean, what's the evidence that supports any finding of discrimination? So that goes back to the first argument that I started with, Your Honor, which is- Or it goes to both, no? I mean- Well, it does, except for on the second one, the proffered reason. Your Honor stated in the Quan case that if there's some weakness, implausibility, inconsistency, or contradictions in the employer's proffered non-retaliatory reasons, then it's a question of fact for the trier of fact. So the reasons they gave was, we're assigning her because of her experience and skills. You don't need experience, 30 years of teaching, experience and skills, photocopying binders as a teaching assistant. The mendacity of that proffered reason, which is the word that the courts use, is at least a question of fact, if not very obvious. She's taken from the classroom experience, teaching, to photocopying, and that's going to be only for half the day, and that's what her job responsibilities were. She was told that by Ms. Darius. It was confirmed by the CEO and the principal in a subsequent meeting. The head of the program testified that it was out of character for her experience to be given that assignment. And that no other teacher had ever been assigned such duties, ever, in the school's history. And she actually testified, and this is the person running that program, said the assignment was, in her view, just not right. She's management, she's the third person, and that's what she concluded about the assignment. With respect to the test, which I'm going back to what your honor, what I first started with, was she treated less favorably? And so what the defense focus on is says, you need to do a replacement. You need to say, A, completely replaces B in terms of employment, and that is not the test. There's other instances in the record of an inference of discrimination. First off, they hired these two young teachers in January of that year. And one of them wasn't even a teacher. She was a teacher's assistant. The one that was a teacher, again, they're both in their 20s, came on board. And they were allowed to be teachers, okay, teachers. My client was removed from teaching, all right? She was no longer a teacher. And that's the removal part of it. We don't have to match up and say, absolutely, they took all her classes. They took some of her classes. What's the evidence? I mean, she was assigned to something she didn't want to do. And maybe objectively, it's unsatisfactory for a professional teacher. But what's the sign that this was done by reason of age discrimination? So some of the other indicators of age discrimination were- In a school, there will always be somebody younger than you are and somebody older than you are. But what's, and then you get a lousy assignment. You say, well, it's because the assignment went to me and not to somebody who's younger. That doesn't support an inference of discrimination. Right. Well, it does support in part, but you're right, Your Honor, we need other. So when she would speak to the principal, who is the actor in this case, when she would talk about her experience, her time in the organization and skill set, he would do this thing that's described in the record where he would use, he would talk over her and go make noises. As she's talking about her experience and what she had done, he'd go, bap, bap, bap, bap, bap, bap, like very immature. Well, he may be a jerk, but what's the basis for concluding that that's on the basis of her age? Because that's what you have to prove under the ADA claim, no? Yes, but the inference is, because of her long time there, her age, that's why he's acting in the fashion he does. As the younger people in the room, he's fawning over them and soliciting their ideas, and when the complainant, or the plaintiff speaks, he talks over her and... Is there evidence that he's doing that with respect to other people of the plaintiff's age? In other words, there's certainly evidence in the record that there were other people of her age. No, there's no other record, no inference that he did it to other people in the record. But there were people there who were even older than she was, and he didn't make funny noises at them. No, he did it to her. You're right, Your Honor, just her. And you're challenging only a dismissal of the ADEA claim, correct? Correct. Well, the 496, the state court companion claim is in there. It's the same standard, the same application of the law, and we refer it just as a footnote, that the same arguments apply. But it's the ADEA claim that we're here for, Your Honor. That's it, I'll reserve the rest of my time, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Scott Cannell. I represent the appellee, St. Ann Institute. One of the things I think that the court did identify was there was a question of fact concerning what this assignment was. And the appellant's briefing really mischaracterizes this assignment by trying to boil it down to making photocopies and assisting other teachers with lesson plans. So I'm going to read you from the testimony of Barbara Darius, the one individual who spoke with the plaintiff's supervisor, who was the principal of the school, about what the assignment would be. She is to Xerox common core standards for the courses that were being taught in the Albany program, and she was to work with the teachers in preparing a lesson plan and Xeroxing those materials. This is a new program for St. Ann Institute. What page is that? I would, I have it, it's A-76. This was a new program for St. Ann Institute, an institution that's been in Albany for over 125 years. They were students who were being referred from the city school district of Albany because they were having behavioral or academic difficulties. They ranged in age from 12 to 18. So this is a broad spectrum of young students, students in distress. Either. A-76, S-A-76. No, it would be A-76, Your Honor, the appendix that the appellant filed. These students were in any number of forms of distress. It could be academic, but most likely it was behavioral. And so imagine that come October 14, when the first student entered the Albany program, now St. Ann Institute has to determine where that student is in their education. They have to determine why it is, or if they are, and why they're falling behind. If they're a special education student, they have to review their IEPs. They have to review their 504 plans, if they have them. This is a complicated matter. And so that was the testimony of the defendants in this case. They said, the very first indication we have of what the assignment was, it was to plan, for the planning and implementation of instructions to students in that program. And we have never denied that Ms. LaMonica was chosen for that responsibility because she is an experienced in the field of education. Now, the plaintiffs would present this as she was in the same classroom teaching the same courses for 30 years, and this was some dramatic shift. It wasn't. She had done behavioral assessments. She had been the committee's special education chair. And only in the last two years had she been an actual in-the-classroom teacher. You agree with the proposition that if there were evidence to support the conclusion that the defendant's explanation for the reassignment was pretextual, that that would require denial of summary judgment? If there were proof that their explanation were pretextual, yes, Your Honor. But I think what they're driving towards. So why is there not a factual dispute on that, based solely on Ms. Darius' testimony, that in essence, you know, she was well overqualified for the job and this was highly unusual and so forth? I want to come back to qualified, Your Honor. But I think the question of fact concerns the third prong of a prima facie case, whether it was an adverse employment action or not. There are many cases where courts have said whether a transfer or a demotion, whether the unique aspects of that particular job qualify as an adverse employment action, creates a question of fact. But those courts, just like the court in our case, went on to say, let's assume that they have established a prima facie case. Let's assume that being assigned to this role in the Albany program was an adverse employment action. Whereas, Your Honors have pointed out when questioning the plaintiff's counsel, where is the evidence of age discrimination in this case? One of the two individuals who made the decision is 59 years old. There are many teachers the same age or older than Ms. Lamonaco. They were not chosen for that role. There simply is no evidence of age discrimination other than subjective feelings about this person who was a jerk. He was not nice with Ms. Lamonaco. They had a lot of disputes that year. And if you read the plaintiff's complaint, it explains why. I think you give away too much when you say that evidence that could support the proposition that the given reason was false would be sufficient to show whatever kind of discrimination it is. I agree, Your Honor. And I would actually point you to Hicks, which is a Supreme Court decision that says, the mere rejection of the defendant's proffered reasons does not compel judgment for the plaintiff, who at all times bears the ultimate burden of proving intentional discrimination. I agree. There is scarcely any area in which people more frequently and regularly give false explanations than in the employment context. And it's in part because the persons who know the true reasons are not the person who speaks, necessarily, because the action is brought against the corporate employer, not the individuals who made the decision. But furthermore, the true reasons just could be any number of a range of reasons which people have a motive to conceal because they may be illegal, they may show greed, they may show all sorts of improper circumstances without necessarily showing age discrimination or whatever is contended by the particular plaintiff. And what is sufficient to go to the fact finder isn't established by any hard rule, it's a logical assessment of what the evidence is. Is the evidence such that it supports a reasonable person in concluding that the reason was the type of discrimination alleged in the case? The appellant's counsel has cited the Kwan case. I'd also direct the court to the Carlton case that we cited in our brief. And I think those cases highlight the type of age discrimination case that should get to a jury. They are a case, like if you take the Carlton case, where there was evidence of ageist comments. We don't have that in this case. That we have a company that says, well, we need to do a reduction of force. And yet, then they retain a younger person, hire another one, and give that to the older employees, give his responsibilities to that employee. They give a younger employee a recall option, but they don't give it to the older employee. And most importantly, to the case law talking about the defendant's stated reason being unworthy of credence. In Kwan and in the Carlton case, what happened was the defendant said, my reason is A, when they had to exhaust their administrative remedies before the EEOC. And yet, when they came to the court, they said, well, it was actually A and B. And the court said, well, wait a minute, which one is it? You had an opportunity to tell the EEOC what this was. Why didn't you tell them it was that second reason? And it really brings into question, with all of that other evidence, what really was motivating the decision here? That is just simply absent in this case. But to get back to something your Honor said a moment ago about experience, about time. That's what this case really boils down to. Ms. Lamonaco says, I had 30 years of experience. They should have put a new teacher in there. Well, that experience has nothing to do with age. There's a correlation, I would agree, that in order to have 30 years of education experience, you would need to be approximately 52 years old. But if a teacher were 39, like the one I'm married to, who has 18 years of education experience and is 39 years old, she would not have an age discrimination claim. So I think we have to be very careful to align experience and age. They are very different things. And so then the question becomes, what evidence is there in this case that age played a factor? And it's simply absent. Thank you. Thank you, Your Honor. Well, here we're back. I do want to refer the court to the appellee's brief at page 24. There's a quote from the deposition transcript of Ms. Lamonaco, which is going to be relevant in the court's consideration. It says, did Mr. Wideman ever instruct you that Mrs. Lamonaco was not to teach in the Albany program? And the answer that's quoted is no. And the appellee refers to the record. Well, that's not what the quote is, because there was a rata sheet signed by the witness who changed her answer to that question. So that question doesn't stand, and it's not part of this record. You can see that in the record. Your Honor addressed the fact, and you've said it before, that these cases are not decided in an isolation. You've got to look at the broad features of the case, because no one ever, whether it's age discrimination or racial discrimination, they're always concealing what the reasons are, if that's a driving force behind it. You would be surprised. There are many cases in which people in an unguarded moment exhibit hostility based on race, sex, religion, disability. And when it exists, it sometimes surfaces. It doesn't have to, but it can. Yes. And I've handled many of them, Your Honor, and many of them are not as obvious, because people have become smarter to hide their true motives. So we have to look at the record. We have to look at instances. A little can go a long distance, but nothing is still nothing. Right, but hiring two young teachers, uncertified teachers even, and have them take over a classroom that she taught. I don't see how the young teachers are ever going to get any experience if they're not given any classes. They are classes, but they don't push out the older ones, which they did in this case. Now, you had a separate claim that this was based on retaliation for her essentially lodging complaints with respect to the school, correct? Yes, Judge, we did. And that was dismissed because you failed to find a time on his grounds? We withdrew the complaint. There are a number of reasons we withdrew it. And is that not a more compelling explanation for her treatment here? I don't know, Your Honor. We believe that the facts support that this was the reason, given the way that it unfolded in terms of the younger teachers and how he treated her. How he treated her different in settings with the younger teachers than he treated her, just in a dismissive way, Your Honors. Thank you. Thank you. Thank you both.